IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DZIEWA, individually and as　　：
Parent and natural guardian of JOSHUA ：
DZIEWA, a minor, and LORI DZIEWA,　：
Parent and natural guardian of JOSHUA：
DZIEWA, a minor.　　　　　　　　　： CIVIL ACTION NO. 08-5792
　　　　　　Plaintiffs　　　　　　：
　　　　　　　　　　　　　　　　：
　　　v.　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　：
PENNSYLVANIA INTERSCHOLASTIC ：
ATHLETIC ASSOCIATION, INC.,　　　：
Defendant　　　　　　　　　　　 ：

## DEFENDANT'S BRIEF IN OPPOSITION TO
## MOTION FOR TEMPORARY RESTRAINING ORDER

### INTRODUCTORY STATEMENT

Plaintiffs challenge the decision of a Board of Appeal of the Pennsylvania

Interscholastic Athletic Association, Inc. ("PIAA"), that Joshua Dziewa is ineligible to

participate in the sport of wrestling for a period of one year because his transfer from

Pennsbury High School ("Pennsbury") to Council Rock South High School ("CRS") was

materially motivated at least in part for an athletic purpose relating to the sport of

wrestling.

PIAA learned of the Complaint on the afternoon of Tuesday, December 9, 2008,

and learned, at the same time, that the Court would be considering Plaintiffs' request for

emergency relief on the following day.  PIAA has not yet had an opportunity to properly

brief the claims set forth by Plaintiffs and, for present purposes, this brief addresses

only the question of whether emergency injunctive relief pending a hearing is

appropriate.  This brief does not address the merits of the claims (which PIAA strongly disputes but which PIAA requests time to argue properly).

As is set forth below, Plaintiff cannot meet the critical elements needed for the grant of a temporary restraining order ("TRO"), particularly on the issue of immediate and irreparable harm.  Both Federal and Pennsylvania courts have recognized that the loss of athletic eligibility of an entire year does not constitute immediate and irreparable harm justifying injunctive relief.  Certainly, if ineligibility for an entire year does not constitute irreparable harm, the loss of a couple of meets pending a hearing when the Court will provide an opportunity for an appropriate preliminary injunction hearing, does not constitute the type of harm that justifies a TRO.

Moreover, if granted, the relief requested by Plaintiff may do considerably more harm to Joshua's teammates and opponents than Plaintiff would suffer if the request is denied.

## II. FACTUAL BACKGROUND

### A.   PIAA.

PIAA is a non-profit corporation and a voluntary membership organization composed of most public and private high schools in Pennsylvania, with the purpose and function of regulating interscholastic athletic competition among and by its member schools.  PIAA's membership consists of 1,452 schools, of which 767 are high schools and 685 are junior high/middle schools.

For administrative purposes, PIAA is divided into twelve geographic Districts, each of which has a District Committee elected by member schools within the District. Each District Committee elects a chairman, who becomes that District's representative

2

on the Board of Directors, which is PIAA's statewide governing body.  Other members of

the Board of Directors include representatives of junior high/middle schools, the

Department of Education, public school boards, school principals, school district

superintendents, athletic directors, coaches, sports' officials, girls' athletics, parents and

private schools.  Most members of the Board of Directors are experienced educators

having extensive background and experience in dealing with high school athletics.

Pennsbury and CRS are PIAA members under the jurisdiction of District I, which

is the PIAA geographic District composed of the counties of Bucks, Chester, Delaware

and Montgomery.

**B.    The Transfer Rule.**

The members of PIAA, through its Board of Directors, establish rules governing

the eligibility of students to participate in competition between PIAA members.

Minimum academic, attendance, health, and age requirements are examples of areas of

eligibility regulated by PIAA.

Another area, and one of the most contentious ones, relates to restrictions on

eligibility when students leave one school and enroll in another.  Such restrictions

seemingly run contrary to the natural belief of parents that they are free to enroll their

children in whatever school they believe to be in the best interest of their children.  In

contrast to this understandable interest of parents and students is the equally

substantial interest of PIAA's member schools and of society itself.  The focus of the

educational institutions is academics.  When students transfer between schools for

athletic reasons, they subordinate academics to athletics, endanger competitive equity,

and change the entire dynamics of interscholastic athletics.

PIAA eligibility rules are set forth in the PIAA By-Laws, adopted by its Board of Directors. Article VI of the By-Laws (the "Transfer Rule") is the provision at issue here. The purpose of the Transfer Rule is set forth in the Preamble to the Rule:

> The purpose of this ARTICLE is to deter transfers and/or recruiting which are materially motivated in some way by an athletic purpose.
>
> PIAA and its member schools believe that interscholastic athletics has a valuable role in the overall development of students and is a useful character building tool. PIAA and its member schools believe further that, despite increasing societal pressures to elevate the role of competitive athletics in society and in the educational process, athletics should remain subservient to academics. Students who make decisions as to what school to attend based upon factors relating to athletics defeat this objective. Further, such decisions are detrimental to efforts to maintain competitive integrity and equity, to prevent athletic recruiting, and to instill school loyalty.
>
> PIAA recognizes the difficulty in preventing transfers which are materially motivated in some way by an athletic purpose. Experience has shown that students can often disguise athletically motivated transfers and, in almost every situation, show at least some legitimate purposes for such transfers. PIAA further recognizes that District Committees, without subpoena powers or investigatory staffs, may not be able to consistently and effectively police athletically motivated transfers. Further, efforts to measure how much of a factor athletics must play in a decision before it is considered improper is, while possible, also extremely difficult.
>
> In light of the above stated important educational and organizational objectives, and the challenges presented in attempting to prevent athletically motivated transfers, PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for athletic purposes. The Board of Directors recognizes that this approach may, on occasion, result in a presumption of ineligibility for students who may not have actually considered athletics as a factor in transferring, and may conversely not catch all students who actually considered athletics as a factor. Consequently, the following ARTICLE includes a provision which provides the Regional Panels and District Committees, within their respective jurisdictions, with the power, under appropriate circumstances, to change eligibility status to meet the objectives of this ARTICLE.

As there are many thousands of transfers among schools each year (any change between two schools is technically a transfer), Article VI provides guidelines and standards to identify those situations where there is little likelihood of transferring for athletic purposes, resulting in immediate eligibility; it also identifies circumstances where the risk is greater, resulting in partial or no eligibility.

Even where a student has presumptive or immediate eligibility, the Transfer Rules provides for review of the situation by the District Committee.  (There are situations in which immediate eligibility is provided for in section 2 of Article VI of the PIAA Bylaws.  Even so, section 4.D of Article VI provides for the orderly application of the Transfer Rule "notwithstanding Section 2 of this ARTICLE.")  The Committee has the authority to decide on eligibility depending upon its finding whether the transfer was materially motivated in some way by an athletic purpose.  The applicable Section 4B provides that:

> The Principal, on behalf of the student who is not otherwise eligible under Section 2 of this ARTICLE may request that the District Committee waive the period of ineligibility in all sports.  Said waiver shall not be granted if the District Committee finds that there exists a reasonable likelihood that the transfer was materially motivated in some way by an athletic purpose.

Athletic transfers are defined in Section 4E of Article VI as follows:

> Transfers which are motivated in some material way by an athletic purpose are those transfers which would not have occurred but for a desire of the student or the student's family (1) to gain additional playing time; (2) to play for a particular school, coach, or Team; (3) to avoid either playing for, or athletic sanctions imposed by, a particular school, coach, or Team; and/or (4) to gain increased media or college exposure.

Article VI also includes a list of eleven illustrations of circumstances which may indicate athletic purpose. As discussed below, several of them are applicable to this matter.

With the above identified standard and criteria utilized, matters are decided on a case-by-case basis, with evidence in each case governing the outcome. At the option of the family, appeal hearings are closed to the public because of the need to bring out personal and private information of juveniles and their parents that often trigger changes of residences and/or schools. The public is, therefore, unaware of critical facts made in some of those decisions. To explain oneself in a closed PIAA hearing is not to make one's family life public.

### C.   Plaintiff And The Transfer To Council Rock South.

On August 21, 2008, CRS submitted a request to the District I Committee on behalf of Plaintiff. This request was based on a "waiver request form" completed by Joshua's father. A true and correct copy of that document is attached hereto as "Exhibit A." A hearing to determine eligibility was held by the District Committee, which determined that Joshua was ineligible to participate in interscholastic wrestling for a period of one year. That decision was appealed to the PIAA Board of Directors.

A PIAA Board of Appeal convened on November 14, 2008, to hear the appeal. At the hearing, Plaintiff was represented by counsel and had the opportunity to present all evidence believed by him to be relevant to his position. Other parties participating in the hearing included representatives of CRS and Pennsbury High School. The hearing was transcribed and a copy of the transcript will be submitted to the Court as part of the preliminary injunction proceeding.

Following the conclusion of the hearing and deliberations, the Board of Appeal voted (5-0) in open session to sustain the District Committee decision. A written letter setting forth the reasons for the decision was sent to the Principal of CRS, as well as to Charles Mandracchia, Esq., legal counsel for Plaintiff on November 25, 2008. A true and correct copy of that letter is attached hereto as "Exhibit B ". As noted therein, the Board of Appeal concluded that athletics was a substantial, if not the primary, motivating factor in the decision of Joshua to transfer to CRS. The Board determined as follows:

1. Joshua attended 7th and 8th grades at Pennwood Middle School in 2004-2005 and 2005-2006. During both years, he participated in interscholastic football and wrestling. Pennwood Middle School is in the Pennsbury School District.

2. Joshua attended 9th and 10th grades at Pennsbury in 2006-2007 and 2007-2008. During both years, he participated in interscholastic wrestling.

3. Joshua recently began his 11th academic grade year. Subsequent to the end of the 2007-2008 school year, Joshua moved with his father into a residence in the Council Rock School District, where he enrolled at Council Rock South.

4. Joshua's parents described their marital status as "separated." They have not filed for divorce. However, Joshua's father, John A. Dziewa, moved out of the family residence in August 2008, and into a residence in the Council Rock School District.

5. Joshua's father contacted a real estate agent in May 2008. He was shown several properties in the Council Rock School District, which is located approximately twenty minutes from Pennsbury. Mr. Dziewa made an offer to purchase one of those properties on July 10, 2008; and the offer was accepted with settlement scheduled for August 29, 2008.

6. In a Custody Agreement dated September 2, 2008, Joshua's parents agreed to their joint custody of Joshua. That agreement stipulated that the non-residential parent would have certain rights, but the agreement did not describe either parent as the residential parent or the non-residential parent.

7. In a separate Parenting Agreement, also dated September 2, 2008, Joshua's parents agreed that his father "shall be the primary residential parent for" Joshua, and agreed to "joint legal custody."

8. Using a PIAA Member School Athletic Transfer Waiver Request Form dated August 21, 2008, Joshua's father gave, as the reason for Joshua's transfer from Pennsbury to Council Rock South, the following:   "Academic and building climate.   Inefficiency of school district (Pennsbury).   Position my son to succeed better academically."

9. The Board of Appeal heard three differing explanations as to the reason for transfer:

   a.     When questioned by the Board of Appeal as to whether the stated reasons were in fact the reasons for the transfer, John A. Dziewa responded that they were not.  The explanation given by Mr. Dziewa to the Board of Appeal for presenting false reasons for the transfer was that Joshua was transferring because of the separation of Mr. and Mrs. Dziewa, and that Mr. Dziewa did not want known the separation.  He felt that his privacy would be compromised if the separation was revealed in the PIAA Member School Athletic Transfer Waiver Request Form.

   b.     Lori Dziewa, Joshua's mother, continued to assert that the reason for the transfer was academic difficulties at Pennsbury.

   c.     Joshua asserted that the reason for his transfer was that he did not want to let his father, who was moving outside the immediate area, to be alone.

10. The Board of Appeal did not find credible the assertion that Joshua transferred for academic reasons.  Joshua passed all subjects and his grades were at least average.  There was neither evidence nor testimony presented regarding efforts to address academic concerns; nor was there substantial evidence presented that Council Rock South offered greater academic opportunities or circumstances than were available to Joshua at Pennsbury.

11. The only substantive evidence of any significant difference between the Pennsbury and Council Rock South academic settings was that Council Rock South does not use block scheduling, while Pennsbury has used "block" scheduling continuously since 1994.

12. While evidence in the form of exhibits was presented to the effect that block scheduling was poorly suited to Joshua's learning style, the Board of Appeal did not find this evidence credible, in part, because it did not focus on any specific learning characteristics of Joshua.

13. The Board of Appeal also did not find credible Mr. Dziewa's explanation as to why he presented a false explanation for the transfer.  While his own change of residence would likely not have attracted attention, Joshua's transfer would

inherently bring significant attention to the split. Joshua was a high profile wrestler who had won Section, District, and Region titles, while winning his first 44 matches as a sophomore. His change of school districts would be a very public event, and the fact that he was wrestling for a school other than the school for which he had wrestled during the previous years would be highly noticeable both in the wrestling community, in Pennsbury, and in the region in general. Also noticeable, but less so, would be the fact that Joshua's siblings were still attending school in his previous school district of residence. Joshua's move to the Council Rock School District, while the bulk of his family remained in Pennsbury School District would have immediately brought considerable public attention to his parents' alleged separation.

14. Had John A. Dziewa chosen a separate residence within the Pennsbury School District, then Joshua (regardless of which parent or parents he lived with) would have attended the same high school as he had the previous year, and no one would have had cause to wonder about any change in his parents' marital status, thus preserving the family's privacy. The failure to take this approach suggests that privacy was not the actual reason for failing to disclose the reasons for transfer, that alternative reasons formed the true basis for the transfer from Pennsbury to Council Rock South, and that Mr. Dziewa sought to conceal the actual reasons both in the PIAA Member School Athletic Transfer Waiver Request Form and before the PIAA Board of Appeal.

15. Surveillance conducted by the Pennsbury School District led Pennsbury to conclude that Joshua left in the morning to attend Council Rock South from the residence in the Council Rock School District on two days during the surveillance period and left from the residence in Pennsbury School District on three days during the surveillance period.

16. As briefly noted above, Joshua is an outstanding wrestler and, although only a sophomore last year, was described as a leader on the Pennsbury wrestling Team. He was 44-0 prior to reaching the 2007-2008 PIAA Wrestling Championships, where he advanced to the quarterfinals before suffering his first defeat of that season. Also as noted above, he was a Section, District, and Region champion.

17. In addition to wrestling interscholastically for Pennsbury, Joshua has also wrestled for the Apache Freestyle Wrestling Club. The club was started by Council Rock coaches and is operated by Brad Silimperi, the head varsity wrestling coach at Council Rock South. Several other Council Rock South wrestling coaches are also coaches for the Apache Freestyle Wrestling Club, as are coaches from other schools. The club operates in the summer.

18. At the 2007-2008 PIAA Wrestling Championships, Joshua and his family stayed at the same hotel with the Council Rock South parents. Previously, in ninth

grade, Joshua had attended a party with Council Rock South parents and the Council Rock South coach. Joshua invited his Pennsbury coach to attend that party, as well.

19. According to Pennsbury head varsity wrestling Coach Joe Kiefer, there were not many problems or issues between him and the Dziewa family. Joshua's father was president of the Pennsbury wrestling program's parents' group, which was referred to at the hearing as the wrestling club. Joshua was a Team captain. The only specific incident relayed to the Board of Appeal, which occurred in approximately May 2008, was when Joshua's father called to complain about the wrestling schedule for the following school year. In addition, Joshua spoke with Coach Kiefer at length in approximately June 2008, about the schedule. He was particularly perturbed about a Tournament called the Truman Tournament, which Joshua felt was at an inappropriately low level of competition.

20. Joshua's wrestling with the Apache Freestyle Wrestling Club, his past success at Pennsbury, and the interest expressed by both him and his father in obtaining a strong wrestling schedule all reflect a determination to wrestle at the highest level possible.

21. The Board of Appeal was aware that Council Rock South has a significant record for success and is a very high profile wrestling program. Last year, the Council Rock South wrestling Team was the Southeast Region AAA Team Champion. The Team also won the PIAA District I AAA Team Championship and finished fourth in the 2007-2008 PIAA AAA Team Wrestling Championship. The Team won the 2004-2005 PIAA AAA Team Wrestling Championship. While Pennsbury has had a decent wrestling program, its success has not been nearly at the level of that of Council Rock South.

22. ARTICLE VI, TRANSFERS, RESIDENCE, AND RECRUITING, Section 4, District Committee Review, Subsection D, of the PIAA By-Laws, provides that a transferring student may be declared ineligible "if a finding is specifically made that there exists a reasonable likelihood that the transfer was materially motivated in some way by an athletic purpose relating to specific sports . . ."

23. Among the illustrations set forth in the PIAA By-Laws as evidencing a transfer which may indicate an athletic purpose are the following:

\*     \*     \*

"2. The student, or a parent . . . has a problem with a coach at either a personal or professional level."

\*     \*     \*

"8.  The student, or a parent . . . desires that the student play on a more successful or higher profile Team to gain a higher level of competition and/or more exposure to college scouts."

"9.  The student moves with one parent . . . into a . . . residence in the new public school district, especially where the student and/or the parent . . . returns to the family home in the evening and/or on weekends."

\*       \*       \*

24. Here, the Board of Appeal found that a material motivating factor for Joshua to transfer to Council Rock South was his desire to wrestle for his club wrestling coaches, at a higher profile school, and at a higher level of Regular Season competition. The selection of the Council Rock School District as the location of his father's change of residence was consistent with this intention.

## III.  ISSUES PRESENTED

A.      WHETHER PLAINTIFF CAN PROVE A RISK OF IMMEDIATE AND IRREPARABLE HARM FROM NOT PARTICIPATING IN WRESTLING PENDING A PRELIMINARY INJUNCTION HEARING?

B.      WHETHER THE LIMITED HARM WHICH MIGHT BE SUFFERED BY PLAINTIFF IF A TRO IS NOT GRANTED IS OUTWEIGHED BY THE HARM WHICH WOULD BE SUFFERED BY PIAA AND OTHERS IF AN INJUNCTION WERE TO BE GRANTED?

## IV.  ARGUMENT

A.      **THERE IS NO RISK OF IRREPARABLE HARM TO PLAINTIFF**.

The critical element to be considered in ruling on any TRO request is whether the plaintiff will suffer immediate and irreparable harm absent the requested injunction.

Here, if the TRO is not granted, Joshua will not be permitted to participate in interscholastic wrestling matches pending a preliminary injunction hearing. This Court has previously determined that such harm (even for an entire season) does not constitute immediate and irreparable harm. See Cruz v. Pennsylvania Interscholastic

Athletic Ass'n, Inc., No. 00-5594 (E.D. Pa. Nov. 20, 2000) (submitted herewith as

Appendix "A"):

> ...Plaintiff is only limited in his participation in high school athletics rather
> than barred from it entirely. For instance, he is allowed to practice with the
> team, and dress in uniform and attend the competitions with the team.
> Not being able to play on game day is certainly a disappointment but does
> not in my judgment constitute the type of harm warranting the
> extraordinary remedy of injunctive relief.

Id., at 2

    This approach has been taken by all other federal courts considering the issue in

Pennsylvania. See Sahene v. Pennsylvania Interscholastic Athletic Ass'n, No. 99-902

(W.D. Pa. July 19, 1999) (Appendix "B"):

> We also find that plaintiff will not suffer irreparable harm if he is not
> permitted to participate in interscholastic athletic competition during the
> 1999 or 2000 school year. Although Christopher Sahene is not eligible to
> play football, defendant does not bar him from practicing with Fox
> Chapel's teams or coaching in the sport in which he is interested. Plaintiff
> is also free to participate in intermural [sic] activities as well as non-school-
> related athletic events.

At 5-6. See also Larkin v. Pennsylvania Interscholastic Athletic Ass'n, No. 1:CV-98-

1295 (M.D. Pa. Sept. 2, 1998) (Rambo, J.) (Appendix "C") ("Wolf will not be irreparably

harmed if the court denies his motion for preliminary injunction and thus allows PIAA's

denial of Wolf's eligibility to participate in interscholastic athletics to remain in effect.").

    In another transfer case, Judge Herman, in the Middle District, rejected a request

for injunctive relief by observing that:

> As noted, the plaintiff has access to physical exercise, athletic instruction
> and even competition (with athletes from his own school). He is merely
> barred from competing as a member of one high school team against
> athletes from other schools for one year.

Dallam v. Cumberland Valley School Dist., 391 F.Supp. 358, 362 n. 5 (M.D. Pa. 1975).

In yet another case involving an athletic transfer, Chief Judge Ziegler, of the United States District Court for the Western District of Pennsylvania, determined that: "Mr. Fortson is an 11th grade student who will be eligible to play basketball at Shaler High School for most of his senior year. In the meantime, he is eligible to practice with the high school team, and is eligible to play with an AAU team immediately, where he can maintain and develop his skills." Fortson v. Shaler Area School Dist., No. 92-2462 (W.D.Pa. Jan. 6, 1993) (Appendix "D"), at 5.

The most recent transfer case addressing the issue was Brownlee v. Pennsylvania Interscholastic Athletic Ass'n, No. 2:07-CV-32 (W.D. Pa. 2007) (Appendix "E"), where Judge Cercone cited Fortson with approval and determined as follows:

> Now, I recognize that these opinions were authored by non-appellate courts in a published opinion, but I think that Judge Ziegler's reasoning carries over into this case.
>
> I mean, the facts show that Sam can continue to practice with the team, he can be coached, there are other wrestling activities available that he can participate in. And quite frankly, when he's in his junior season, or his senior year at Canon-McMillan, I believe when he looks back at his sophomore year, this is going to be distant past.
>
> I do not think he's going to be irreparably harmed by missing six weeks of this program.

At 99-101.

The approach of the federal courts is consistent with that of Pennsylvania courts. The Commonwealth Court, in a fairly recent decision, specifically held that: **"the loss of an opportunity to play interscholastic athletics for one year does not constitute irreparable harm."** Revesz v. Pennsylvania Interscholastic Athletic Ass'n, Inc., 798 A.2d 830, 837 (Pa. Cmwlth. 2002) (emphasis added).

Since Revesz, no court, federal or otherwise, has determined that any student athlete's loss of eligibility constitutes immediate and irreparable harm. Just last year, for example, the Court of Common Pleas of Montgomery County rejected the claim of a wrestler who had been disqualified from further participation in the PIAA Inter-District Championship Tournament. Judge Bertin concluded, *inter alia*, that the student did not suffer immediate and irreparable harm. Tancredi v. PIAA, No. 2007-3812 (C.C.P. Montgomery Feb. 15, 2007) (Appendix "F."[1]) See also Wallace v. P.I.A.A., 146 P.L.J. 395, 396 (C.C.P. Allegheny 1998) ("Wallace ... can presently practice with the team therefore suffering no irreparable harm.").

The approach taken by the courts has been particularly applicable where, as here, the student is an underclassman. As pointed out by the Court in Tancredi, supra, a junior wrestler is "free his entire senior year to participate at whatever weight class he is at that point in time and whatever his competition may be then and prior thereto with all of the tournaments so that he has that ability to advance." This analysis has been applied in other cases as well. See Wallace, 146 P.L.J. at 396 ("Wallace will be eligible to compete in his senior year and can presently practice with the team therefore suffering no irreparable harm.");

Here, Plaintiff may attend CRS, complement his academic studies by participating in intramural athletics, play other sports, continue to wrestle for one of the

---

[1]     Plaintiff's counsel herein also represented the student in that matter and is familiar with the case. In 2006, Plaintiff's counsel also represented another student who ran afoul of the Transfer Rule and was ruled ineligible. In that case, Atiyeh v. PIAA, No. 2006-C-2512 (C.C.P. Lehigh Aug 31, 2006), Judge Brenner denied the request for preliminary injunction on the basis of the Revesz decision.

highly competitive club and other non-varsity teams in the area, play recreational sports,

practice with the school's other interscholastic teams, receive coaching, and participate

in a non-player capacity.  Plaintiff is prevented only from participating in interscholastic

wrestling contests, and the courts have determined that being refused eligibility to

participate in interscholastic athletics, even for an entire year, is not irreparable harm.

**B.    THE HARM TO DEFENDANT AND OTHERS IF THE INJUNCTION IS GRANTED WILL BE GREATER THAN THE HARM TO PLAINTIFF IF THE INJUNCTION IS DENIED.**

Issuance of the requested injunction is likely to cause significant injury to PIAA,

for which the issue is emphatically not limited to whether one student plays basketball

for one season at a particular school.  It may also cause cognizable harm to others.  As

another court stated in upholding application of a transfer rule:

> In almost every instance, the possible benefits flowing from a temporary restraining order or injunction will be far outweighed by the potential detriment to the Association, as well as to its member schools who are not before the Court.  Only in rare instances would the granting of the temporary restraining order or temporary injunction be a proper remedy.

Kentucky High School Athletic Ass'n v. Hopkins County Board of Educ., 552 S.W.2d

685, 690 (Ky. App. 1977).  This conclusion was also reached by Judge Ziegler in the

Sahene case, where it was determined that:

> Plaintiff has failed to establish that an injunction will not result in greater harm to other interested parties or that an injunction would be in the public interest.  The grant of an injunction would introduce uncertainty into a settled area of the law and we would undermine the authority of the decision makers in this case.  It would also be reversed on appeal in our judgment but until that time mischief would be done to the interscholastic athletic programs in Pennsylvania.

Sahene, at 6.

Here, the Transfer Rule is intended to prevent students from doing just what Plaintiff did here:  jump schools for athletic reasons.  In <u>Gray v. Missouri State High School Activities Ass'n</u>, No. 99-4273-CV-C-9 (W.D. Mo. Dec. 1, 1999)(Appendix "G")::, the court considered the public interest in enforcing a transfer rule in Missouri and observed that:

> Third, the public interest supports denying plaintiffs a Temporary Restraining Order.  Granting a Temporary Restraining Order in this case would encourage similarly situated student athletes to transfer for athletic reasons and then seek to enjoin the MSHSAA from enforcing its transfer rule.  This would adversely impact the MSHSAA's goal of ensuring fairness and equality of competition in interscholastic activities.  The public interest is best served by rules … preventing transfers for athletic reasons.

<u>Id</u>. at 5.

Finally, there must be considered the interests of others not party to this matter.  For athletes at CRS, this is a zero sum situation.  If Joshua is allowed to wrestle, another student, who is properly at CRS and prepared to participate, will lose that opportunity.  <u>See</u> <u>Trofimuk v. Pennsylvania Interscholastic Athletic Ass'n</u>, 7 Pa. D & C.3d 712, 716-17 (C.C.P. Butler 1978) ("This court sees no reason why the athlete who has made the squad should now be bumped by someone who wishes this court to grant an exception to the rule.").

Also, the entire team is at risk if Plaintiff plays pursuant to an injunction later determined to be wrongly issued.  Under such circumstances, CRS's opponents will have been compelled to compete against a student who was wrongfully on the mat.  To remedy such inequity, the PIAA By-Laws provide that any meet in which Joshua

participates pursuant to a reversed injunction may be forfeited.[2]  See PIAA By-Laws,

Article XIII, Penalties, Section 10, Fairness to Opponents.  As noted by the court in

Specht v. The Pennsylvania Interscholastic Athletic Ass'n, No. 83-E-81 (C.C.P. Lehigh

1983) (Appendix "H"), another eligibility case: "I don't help anyone if I grant relief which

is going to be reversed in any event.  In fact I have made the situation worse."  At 2.

The risk to teammates and opponents from an erroneous grant of a TRO is great.

## V. CONCLUSION

Plaintiff will not suffer cognizable harm from the loss of his opportunity to

participate in interscholastic wrestling until a hearing can be held on the matter, and any

harm which would be suffered by Plaintiff is outweighed by the harm to PIAA and others

if an injunction is granted.  PIAA respectfully submits that the TRO prayed for be denied.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By /s/ Jeffrey F. Champagne
     Alan R. Boynton, Jr.
     Pa. I.D. No. 39850
     Jeffrey F. Champagne
     Pa. I.D. No. 64116
     100 Pine Street
     P. O. Box 1166
     Harrisburg, PA  17108-1166
     (717) 232-8000

Dated:  December 16, 2008        Attorneys for Defendant

---

[2]     Following Revesz decision, the District Committee (subsequently affirmed in a 23-0 vote of the Board of Directors) required the students' school to forfeit all games in which the students participated.  This action also occurred following the Commonwealth Court decision in Pennsylvania Interscholastic Athletic Ass'n, Inc. v. Greater Johnstown School Dist., 76 Pa. Cmwth. 65, 73, 463 A.2d 1198, 1202 (1983).

**EXHIBIT A**

## PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC. (PIAA)
## MEMBER SCHOOL ATHLETIC TRANSFER WAIVER REQUEST FORM
(Revised July 1, 2008)

Pursuant to ARTICLE VI, TRANSFERS, RESIDENCE, AND RECRUITING, Section 4, District Committee Review, of the PIAA By-Laws, the Principal of a PIAA member school to which a student transferred, who is not otherwise eligible under Section 2, subsections A through G, may request a waiver of ARTICLE VI, Section 3, Ineligible Students, from the PIAA District Committee having jurisdiction over that Principal's school by (1) completing Sections 1 and 2 of that Form; (2) having the student's parent(s) or guardian(s) complete and sign Section 3 of that Form; (3) thereafter completing and signing either Section 4A or 4B of that Form; (4) routing that Form to the Principal of the school from which the student transferred, for that Principal to complete and sign either Section 5A or 5B; (5) having that Principal return that Form to the Principal of the PIAA member school to which the student transferred; and (6) then submitting that completed and properly executed Form to the PIAA District Committee having jurisdiction over the Principal's school to which the student transferred, for that District Committee's consideration.

(PLEASE PRINT OR TYPE)

DATE: 8/21/08

### SECTION 1. RECEIVING MEMBER SCHOOL INFORMATION

A. Full Name of Principal: ALBERT R. FUNK

B. Member School: Council Rock South High School

C. Member School Address: 2002 Rock Way   Holland, PA   18966

D. Member School Phone No.: (215) 944-1100    Member School Fax No.: (215) 944-1148

### SECTION 2. TRANSFERRING STUDENT INFORMATION

A. Full Name of Student: Joshua (First)    Ryan (Middle)    Dziewa (Last)    Grade 11

B. Place of Residence: 806 Beacon Hill Ct.    Holland    PA    18966
(Street Address)    (City)    (State)    (Zip Code)

C. Name(s) of the head of household in which the transferring student resides:
John Dziewa    Relationship to the student: Father

D. Residence is located within the boundaries of the Council Rock Public School District

E. Date of Student's Birth: 1 / 5 / 92    F. Age of Student on Last Birthday: 16

G. Date Student Enrolled for the Current School Year: 8 / 21 / 08

H. Summary of Student's School(s) Attended and Sport Participation in Each Season:

| GRADE | SCHOOL YEAR | SCHOOL ATTENDED | LIST SPORT PARTICIPATION IN EACH SEASON | | |
|---|---|---|---|---|---|
| | | | FALL | WINTER | SPRING |
| 7 | 2004-05 | Penn Wood | Football | Wrestling | — |
| 8 | 2005-06 | Penn Wood | Football | Wrestling | — |
| 9 | 2006-07 | Pennsbury | — | Wrestling | — |
| 10 | 2007-08 | Pennsbury | — | Wrestling | — |
| 11 | 07-08 | Council Rock South | | | |

### SECTION 3. TRANSFERRING STUDENT'S REASON(S) FOR TRANSFERRING

The transferring student and/or the student's parent(s) or guardian(s) should set forth the reason(s) for the transfer:

Academic and building climates Inefficiency of school district (Pennsbury)
Position my son to succeed better academically

(Attach Additional Sheet[s] if Necessary)

I (We) hereby acknowledge that I (we) have been informed by the Principal of the PIAA member school submitting this form, or that Principal's designee, as to the requirements of PIAA concerning the eligibility of students at PIAA member schools to participate in Inter-School Practices, Scrimmages, and/or Contests involving PIAA member schools. Such requirements include, but are not necessarily limited to age, amateur status, school attendance, health, transfer from one school to another, season and out-of-season rules and regulations, semesters of attendance, seasons of sports participation, and academic performance.

I (We) further acknowledge that the information set forth in SECTION 2, TRANSFERRING STUDENT INFORMATION, and SECTION 3, TRANSFERRING STUDENT'S REASON(S) FOR TRANSFERRING, is accurate, complete, and truthful.

_____          8·21·08
(Signature of Parent(s) or Guardian(s))                    (Date)

## SECTION 4.  REVIEW AND CERTIFICATION OF PRINCIPAL OF SCHOOL TO WHICH THIS STUDENT TRANSFERRED.

Albert R. Funk                                    Council Rock South HS
(Print or Type Name of Principal of School          (Print or Type Name of School to
to Which This Student Transferred)                  Which This Student Transferred)

**\*\*(Please complete and sign EITHER A or B below)\*\***

**A.** Upon interviewing the transferring student and the Athletic Director of my school, I hereby certify that, to the best of my knowledge, information, and belief, the student's transfer was not motivated in some material way by an athletic purpose and the student was not recruited for an athletic purpose.

_Albert R. Funk_                                    8/28/08
(Signature of Principal of School to Which This Student Transferred)          (Date)

**B.** Upon interviewing the transferring student and the Athletic Director of my school, I hereby request that the District Committee having jurisdiction over my school review the circumstances of transfer to assess whether the transfer was motivated in some material way by an athletic purpose and/or was the result of recruiting, which was materially motivated in some way by an athletic purpose. I have checked each box that I believe applies to this transfer and affixed my signature certifying to my request for that District Committee's review.

☐ The student's transfer was motivated in some material way by a representative of my school placing an advertisement in a newspaper or other literature directed toward prospective recruits touting the athletic successes of my school's Teams and/or students. **NOTE:** A comprehensive brochure or comparable piece of literature discussing all or most aspects of the school, including, but not focusing on the athletic program, is permissible.

☐ A representative of my school provided the transferring student with free transportation, tickets, or admissions to a Contest (other than free transportation, tickets, or admissions made available to all students, or to all students at the same school, or to all students in the same grade level at the same school, or the transferring student attended a Feeder School of my senior high school).

☐ A representative of my school used AAU or other amateur athletic coaches to steer the transferring student to my school.

☐ A representative of my school offered, to the transferring student, scholarships or financial aid which is not available to other students at my school.

☐ A representative of my school encouraged the parents or relatives of the transferring student to influence the student to enroll at my school to participate in sports. This box need not be checked if the transferring student attended a Feeder School of my senior high school.

☐ A representative of my school promised playing time or a position on a Team to the transferring student.

☐ A representative of my school met with the transferring student to encourage the transferring student to enroll at my school. This box need not be checked if the transferring student attended a Feeder School of my senior high school.

☐ A representative of my school provided transportation or other inducements to the transferring student to take a qualifying examination at my school or to meet with school officials (other than those opportunities provided to all students at a particular school or grade level, or to students attending a Feeder School of my senior high school).

☐ Athletic Personnel from my school directly, or through another person, encouraged the transferring student or that student's parents to have the student enroll at my school. This box need not be checked if the transferring student attended a Feeder School of my senior high school.

☐ A representative of my school provided any item with school advertisement (such as shirts, pennants, caps, jackets, etc.) to the transferring student (other than offers made to all students of a particular school or class, or to students attending a Feeder School of my senior high school).

☐ Athletic Personnel from my school recruited the transferring student to attend my school. This box need not be checked if the transferring student attended a Feeder School of my senior high school.

☐ The transferring student played on a non-school Team which is coached by a person affiliated with my school and the majority of the members of that Team were from my school.

☐  The student's transfer was motivated in some material way by the involvement of a representative of my school in a camp, clinic, or speech at or during which that person used the opportunity to taunt the athletic successes of my school's Teams and/or students.

☐  I am aware of other facts or circumstances which would lead me to believe that this transfer was motivated in some material way by an athletic purpose. (If checked, please explain on next page.) *

☐  I am aware of other facts or circumstances which would lead me to believe that individuals affiliated with my school engaged in recruiting the student for the purpose of participating in athletics. (If checked, please explain on next page.)

*Transfers which are motivated in some material way by an athletic purpose are those transfers which would not have occurred but for a desire of the student or the student's family (1) to gain additional playing time; (2) to play for a particular school, coach, or Team; (3) to avoid either playing for, or athletic sanctions imposed by, a particular school, coach, or Team; and/or (4) to gain increased media or college exposure.

FACTS OR CIRCUMSTANCES WHICH LEAD ME TO BELIEVE THAT THE TRANSFER OF THIS STUDENT WAS MOTIVATED IN SOME MATERIAL WAY BY AN ATHLETIC PURPOSE:

_____
_____
_____
_____
_____
_____
(Attach Additional Sheet[s] If Necessary)

FACTS OR CIRCUMSTANCES WHICH LEAD ME TO BELIEVE THAT INDIVIDUALS AFFILIATED WITH MY SCHOOL ENGAGED IN RECRUITING THIS STUDENT FOR THE PURPOSE OF PARTICIPATING IN ATHLETICS:

_____
_____
_____
_____
_____
(Attach Additional Sheet[s] If Necessary)

_____  _____
(Signature of Principal of School to Which This Student Transferred)        (Date)

PLEASE ROUTE TO PRINCIPAL OF SCHOOL FROM WHICH THIS STUDENT TRANSFERRED.

SECTION 5.   REVIEW AND CERTIFICATION OF PRINCIPAL OF SCHOOL FROM WHICH THIS STUDENT TRANSFERRED.

_____     _____
(Print or Type Name of Principal of School        (Print or Type Name of School from
from Which This Student Transferred)                  Which This Student Transferred)

**(Please complete and sign EITHER A or B below)**

A.  Upon my interviewing the Athletic Director of my school and, if possible, the student and/or the transferring student's parent(s), I hereby certify that, to the best of my knowledge, information, and belief, the student's transfer was not motivated in some material way by an athletic purpose and the student was not recruited for an athletic purpose.

_____  _____
(Signature of Principal of School from Which This Student Transferred)        (Date)

B.  Upon my interviewing the Athletic Director of my school and, if possible, the transferring student and/or the transferring student's parent(s), I hereby request that the District Committee having jurisdiction over the PIAA member school to which the student transferred review the circumstances of transfer to assess whether the transfer was motivated in some material way by an athletic purpose and/or was the result of recruiting, which was materially motivated in some way by an athletic purpose. I have checked each box that I believe applies to this transfer and affixed my signature certifying to my request for that District Committee's review.

☐  The student, or a parent or guardian, or an adult with whom the student resides, was dissatisfied with the student's position or the amount of playing time which the student received.

☑ The student, or a parent or guardian, or an adult with whom the student resides, had a problem with a coach at my school at either a personal or professional level.

☐ The student, or a parent or guardian, or an adult with whom the student resides, is seeking relief from conflict with the philosophy or action of an administrator or teacher relating to sports.

☐ The student, or a parent or guardian, or an adult with whom the student resides, is seeking to avoid or nullify the effect of action by my school relating to sports eligibility (e.g. discipline, attendance, academic performance, etc.).

☐ There is no Team at my school in the particular sport that the student desires to participate in.

☐ The student is following the student's coach to another school to which the coach has transferred.

☐ The student, or a parent or guardian, or an adult with whom the student resides, desires that the student play on a less successful or lower profile Team in order to be ranked higher among the students on that Team.

☑ The student, or a parent or guardian, or an adult with whom the student resides, desires that the student play on a more successful or higher profile Team to gain a higher level of competition and/or more exposure to college scouts.

☐ The student has moved with one parent, one guardian, or one or more siblings, into a rented residence in the new school district; and the student and/or the parent, guardian, or sibling(s) returns to the family home in the evening(s) and/or weekends.

☐ The student, or a parent or guardian, or an adult with whom the student resides, sought out Athletic Personnel at the school to which the student transferred and/or individuals affiliated with the school to which the student transferred engaged in recruiting the student for the purpose of participating in athletics.

☐ The student transferred in the middle of a marking period and/or immediately before or after a sports season.

☐ I am aware of other facts or circumstances which would lead me to believe that this transfer was motivated in some material way by an athletic purpose. (If checked, please explain below.) *

☐ I am aware of other facts or circumstances which would lead me to believe that individuals affiliated with the school to which the student transferred engaged in recruiting the student for the purpose of participating in athletics. (If checked, please explain below.)

*Transfers which are motivated in some material way by an athletic purpose are those transfers which would not have occurred but for a desire of the student or the student's family (1) to gain additional playing time; (2) to play for a particular school, coach, or Team; (3) to avoid either playing for, or athletic sanctions imposed by, a particular school, coach, or Team; and/or (4) to gain increased media or college exposure.

FACTS OR CIRCUMSTANCES WHICH LEAD ME TO BELIEVE THAT THE TRANSFER OF THIS STUDENT WAS MOTIVATED IN SOME MATERIAL WAY BY AN ATHLETIC PURPOSE:

*attached*

_____

(Attach Additional Sheet[s] if Necessary)

FACTS OR CIRCUMSTANCES WHICH LEAD ME TO BELIEVE THAT INDIVIDUALS AFFILIATED WITH THE SCHOOL TO WHICH THE STUDENT TRANSFERRED ENGAGED IN RECRUITING THE STUDENT FOR THE PURPOSE OF PARTICIPATING IN ATHLETICS:

_____

(Attach Additional Sheet[s] if Necessary)

_____                    9/12/08
(Signature of Principal of School from Which This Student Transferred)    (Date)

UPON COMPLETION OF THE ABOVE, PLEASE RETURN TO THE PRINCIPAL OF THE SCHOOL TO WHICH THIS STUDENT TRANSFERRED.

**EXHIBIT B**

# PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.

550 Gettysburg Road • P.O. Box 2008
Mechanicsburg, Pennsylvania 17055-0708
(800) 382-1392 • (717)697-0374
FAX (717) 697-7721
WEB SITE • www.piaa.org

November 25, 2008

Mr. Albert R. Funk, Principal
Council Rock High School South
2002 Rock Way
Holland, PA  18966                    **VIA FACSIMILE AND FIRST CLASS MAIL**

Dear Mr. Funk:

Following the appeal hearing conducted on Friday, November 14, 2008, concerning the eligibility of Joshua R. Dziewa, the PIAA Board of Appeal considered the written materials submitted to and by the PIAA District I Committee; the correspondence that occurred after the date of the District Committee decision; and the documents presented, testimony given, and the arguments made at the appeal hearing.

John R. Radick, Assistant Principal and Director of Athletics, appeared and offered evidence to the Board of Appeal on behalf of Council Rock High School South ("Council Rock South").   Joshua R. Dziewa appeared and offered evidence to the Board of Appeal, as did his parents, John A. and Lori Dziewa.   Joshua and his family were represented by attorney Charles D. Mandracchia.

The following persons appeared and offered evidence to the Board of Appeal on behalf of Pennsbury High School ("Pennsbury"):  Lisa M. Becker, Principal; Shawn W. Neely, Assistant Principal and Director of Athletics; and Joseph Kiefer, head varsity wrestling coach.  Pennsbury High School was represented by attorney Michael D. Kristofco.

The testimony and other evidence presented at the hearing demonstrated to the PIAA Board of Appeal that the decision of Joshua R. Dziewa to enroll at Council Rock South was materially motivated in some way by an athletic purpose.   The Board of Appeal made the following specific findings and determinations.

    1.    Joshua attended 7th and 8th grades at Pennwood Middle School in 2004-2005 and 2005-2006.  During both years, he participated in interscholastic football and wrestling.  Pennwood Middle School is in the Pennsbury School District.

    2.    Joshua attended 9th and 10th grades at Pennsbury in 2006-2007 and 2007-2008.  During both years, he participated in interscholastic wrestling.

Mr. Albert R. Funk, Principal
November 25, 2008
Page 2

     3.    Joshua recently began his 11th academic grade year.  Subsequent to the end of the 2007-2008 school year, Joshua moved with his father into a residence in the Council Rock School District, where he enrolled at Council Rock South.

     4.    Joshua's parents described their marital status as "separated."  They have not filed for divorce.  However, Joshua's father, John A. Dziewa, moved out of the family residence in August 2008, and into a residence in the Council Rock School District.

     5.    Joshua's father contacted a real estate agent in May 2008.  He was shown several properties in the Council Rock School District, which is located approximately twenty minutes from Pennsbury.  Mr. Dziewa made an offer to purchase one of those properties on July 10, 2008; and the offer was accepted with settlement scheduled for August 29, 2008.

     6.    In a Custody Agreement dated September 2, 2008, Joshua's parents agreed to their joint custody of Joshua.  That agreement stipulated that the non-residential parent would have certain rights, but the agreement did not describe either parent as the residential parent or the non-residential parent.

     7.    In a separate Parenting Agreement, also dated September 2, 2008, Joshua's parents agreed that his father "shall be the primary residential parent for" Joshua, and agreed to "joint legal custody."

     8.    Using a PIAA Member School Athletic Transfer Waiver Request Form dated August 21, 2008, Joshua's father gave, as the reason for Joshua's transfer from Pennsbury to Council Rock South, the following:  "Academic and building climate.  Inefficiency of school district (Pennsbury).  Position my son to succeed better academically."

     9.    The Board of Appeal heard three differing explanations as to the reason for transfer:

          a.    When questioned by the Board of Appeal as to whether the stated reasons were in fact the reasons for the transfer, John A. Dziewa responded that they were not.  The explanation given by Mr. Dziewa to the Board of Appeal for presenting false reasons for the transfer was that Joshua was transferring because of the separation of Mr. and Mrs. Dziewa, and that Mr. Dziewa did not want known the separation.  He felt that his privacy would be compromised if the separation was revealed in the PIAA Member School Athletic Transfer Waiver Request Form.

          b.    Lori Dziewa, Joshua's mother, continued to assert that the reason for the transfer was academic difficulties at Pennsbury.

Mr. Albert R. Funk, Principal
November 25, 2008
Page 3

c.    Joshua asserted that the reason for his transfer was that he did not want to let his father, who was moving outside the immediate area, to be alone.

10.    The Board of Appeal did not find credible the assertion that Joshua transferred for academic reasons.  Joshua passed all subjects and his grades were at least average.  There was neither evidence nor testimony presented regarding efforts to address academic concerns; nor was there substantial evidence presented that Council Rock South offered greater academic opportunities or circumstances than were available to Joshua at Pennsbury.

11.    The only substantive evidence of any significant difference between the Pennsbury and Council Rock South academic settings was that Council Rock South does not use block scheduling, while Pennsbury has used "block" scheduling continuously since 1994.

12.    While evidence in the form of exhibits was presented to the effect that block scheduling was poorly suited to Joshua's learning style, the Board of Appeal did not find this evidence credible, in part, because it did not focus on any specific learning characteristics of Joshua.

13.    The Board of Appeal also did not find credible Mr. Dziewa's explanation as to why he presented a false explanation for the transfer.  While his own change of residence would likely not have attracted attention, Joshua's transfer would inherently bring significant attention to the split.  Joshua was a high profile wrestler who had won Section, District, and Region titles, while winning his first 44 matches as a sophomore.  His change of school districts would be a very public event, and the fact that he was wrestling for a school other than the school for which he had wrestled during the previous years would be highly noticeable both in the wrestling community, in Pennsbury, and in the region in general.  Also noticeable, but less so, would be the fact that Joshua's siblings were still attending school in his previous school district of residence.  Joshua's move to the Council Rock School District, while the bulk of his family remained in Pennsbury School District would have immediately brought considerable public attention to his parents' alleged separation.

14.    Had John A. Dziewa chosen a separate residence within the Pennsbury School District, then Joshua (regardless of which parent or parents he lived with) would have attended the same high school as he had the previous year, and no one would have had cause to wonder about any change in his parents' marital status, thus preserving the family's privacy.  The failure to take this approach suggests that privacy was not the actual reason for failing to disclose the reasons for transfer, that alternative reasons formed the true basis for the transfer from Pennsbury to Council Rock South, and that Mr. Dziewa sought to conceal the actual reasons both in the PIAA Member School Athletic Transfer Waiver Request Form and before the PIAA Board of Appeal.

Mr. Albert R. Funk, Principal
November 25, 2008
Page 4

15.     Surveillance conducted by the Pennsbury School District led Pennsbury to conclude that Joshua left in the morning to attend Council Rock South from the residence in the Council Rock School District on two days during the surveillance period and left from the residence in Pennsbury School District on three days during the surveillance period.

16.     As briefly noted above, Joshua is an outstanding wrestler and, although only a sophomore last year, was described as a leader on the Pennsbury wrestling Team.  He was 44-0 prior to reaching the 2007-2008 PIAA Wrestling Championships, where he advanced to the quarterfinals before suffering his first defeat of that season. Also as noted above, he was a Section, District, and Region champion.

17.     In addition to wrestling interscholastically for Pennsbury, Joshua has also wrestled for the Apache Freestyle Wrestling Club.   The club was started by Council Rock coaches and is operated by Brad Silimperi, the head varsity wrestling coach at Council Rock South.   Several other Council Rock South wrestling coaches are also coaches for the Apache Freestyle Wrestling Club, as are coaches from other schools. The club operates in the summer.

18.     At the 2007-2008 PIAA Wrestling Championships, Joshua and his family stayed at the same hotel with the Council Rock South parents.  Previously, in ninth grade, Joshua had attended a party with Council Rock South parents and the Council Rock South coach.  Joshua invited his Pennsbury coach to attend that party, as well.

19.     According to Pennsbury head varsity wrestling Coach Joe Kiefer, there were not many problems or issues between him and the Dziewa family.  Joshua's father was president of the Pennsbury wrestling program's parents' group, which was referred to at the hearing as the wrestling club.  Joshua was a Team captain.  The only specific incident relayed to the Board of Appeal, which occurred in approximately May 2008, was when Joshua's father called to complain about the wrestling schedule for the following school year.   In addition, Joshua spoke with Coach Kiefer at length in approximately June 2008, about the schedule.  He was particularly perturbed about a Tournament called the Truman Tournament, which Joshua felt was at an inappropriately low level of competition.

20.     Joshua's wrestling with the Apache Freestyle Wrestling Club, his past success at Pennsbury, and the interest expressed by both him and his father in obtaining a strong wrestling schedule all reflect a determination to wrestle at the highest level possible.

21.     The Board of Appeal was aware that Council Rock South has a significant record for success and is a very high profile wrestling program.  Last year, the Council Rock South wrestling Team was the Southeast Region AAA Team Champion.   The Team also won the PIAA District I AAA Team Championship and finished fourth in the 2007-2008 PIAA AAA Team Wrestling Championship.  The Team won the 2004-2005 PIAA AAA Team Wrestling Championship.   While Pennsbury has had a decent

wrestling program, its success has not been nearly at the level of that of Council Rock South.

22.     ARTICLE VI, TRANSFERS, RESIDENCE, AND RECRUITING, Section 4, District Committee Review, Subsection D, of the PIAA By-Laws, provides that a transferring student may be declared ineligible "if a finding is specifically made that there exists a reasonable likelihood that the transfer was materially motivated in some way by an athletic purpose relating to specific sports . . ."

23.     Among the illustrations set forth in the PIAA By-Laws as evidencing a transfer which may indicate an athletic purpose are the following:

*     *     *

"2.  The student, or a parent . . . has a problem with a coach at either a personal or professional level."

*     *     *

"8.  The student, or a parent . . . desires that the student play on a more successful or higher profile Team to gain a higher level of competition and/or more exposure to college scouts."

"9.  The student moves with one parent . . . into a . . . residence in the new public school district, especially where the student and/or the parent . . . returns to the family home in the evening and/or on weekends."

*     *     *

24.     Here, the Board of Appeal found that a material motivating factor for Joshua to transfer to Council Rock South was his desire to wrestle for his club wrestling coaches, at a higher profile school, and at a higher level of Regular Season competition. The selection of the Council Rock School District as the location of his father's change of residence was consistent with this intention.

On the basis of the foregoing findings, the PIAA Board of Appeal voted unanimously to sustain the decision of the PIAA District I Committee that Joshua R. Dziewa is ineligible to participate in interscholastic wrestling for a period of one year from the date of his transfer from Pennsbury High School to Council Rock High School South. This decision is made for the reason that Joshua's transfer to Council Rock South was materially motivated in some way by an athletic purpose within the meaning of ARTICLE VI, TRANSFERS, RESIDENCE, AND RECRUITING, Section 4, District Committee Review, of the PIAA By-Laws.

This decision does not bar Joshua from Practicing with the Council Rock South wrestling Team or continuing to participate in club competition. We encourage him to do both and look forward to his participation in PIAA competition in his senior year.

Mr. Albert R. Funk, Principal
November 25, 2008
Page 6

If there are any questions about this matter, please contact me at your convenience.

Sincerely,

Bradley R. Cashman
Executive Director

BRC/dta

cc:   Lisa M. Becker, Pennsbury High School Principal
      Alan R. Boynton, Jr., Esq., PIAA Legal Counsel
      Mark E. Byers, PIAA Assistant Executive Director
      Dr. Randy A. Ireson, PIAA District I Vice Chairman
      Michael D. Kristofco, Esq., Pennsbury School District Solicitor
      Dr. Robert A. Lombardi, PIAA Associate Executive Director
      Charles D. Mandracchia, Esq., Counsel for Dziewa family
      Melissa N. Mertz, PIAA Assistant Executive Director
      Shawn W. Neely, Pennsbury High School Director of Athletics
      John R. Radick, Council Rock High School South Director of Athletics
      Robert M. Ruoff, PIAA District I Executive Secretary
      Michael L. Solomon, Esq., PIAA Director of Legal Affairs
      W. Rodney Stone, PIAA District I Chairman