IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DZIEWA AND LORI DZIEWA,** *INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF JOSHUA DZIEWA, A MINOR* : : : : : : : : : : : : : : Plaintiffs, v. **PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.,** **Defendant.** | CIVIL ACTION NO. 08-5792 |

## MEMORANDUM AND ORDER

Presently before this Court is Plaintiff's Motion for Preliminary Injunction (Doc.2) and Defendant's Responses thereto. For the reasons stated below, this Court will deny Plaintiff's Motion.

## BACKGROUND

**The Pennsylvania Interscholastic Athletic Association, Inc.**

The Pennsylvania Interscholastic Athletic Association ("PIAA") is a non-profit corporation and a voluntary membership organization composed of most public and private high schools in Pennsylvania. PIAA consists of twelve (12) geographic districts, each of which has a district committee elected by member schools within the district. Among the PIAA membership are Pennsbury High School ("PHS") and Council Rock South High School ("CRS").

The PIAA serves to regulate interscholastic athletic competition among member schools, and through its members, establish rules governing student eligibility for participation in competition between PIAA member schools. Among the areas of regulation are minimum academic requirements, attendance, health, and age requirements.

Yet, the area of regulation central to this action is that of eligibility restrictions in the instance of

student transfers.  Specifically, the PIAA maintains that because the focus of educational institutions is academics, students that transfer schools for athletic reasons subordinate academics to athletics, and alter the dynamics of interscholastic athletics.  As such, the PIAA has adopted an approach that is intended to strongly discourage and deter students from transferring for athletic purposes.  <u>PIAA Constitution and By-Laws, Art VI</u>.  This approach has led to the authority of Regional Panels and District Committees to change eligibility status within their respective jurisdictions to meet PIAA objectives.

The pertinent section of the PIAA Constitution and By-Laws currently provides that any student that a reviewing PIAA panel determines to have transferred due to athletic intent is rendered ineligible for participation in interscholastic sports for one year from the date of transfer.  The rule mentions the PIAA's recognition of the difficulty in consistently and effectively policing athletically motivated transfers, and determining the role that athletics has played in a transfer decision.  The rule further explains that the PIAA has chosen to address this by providing Regional Panels and District Committees the authority to change eligibility status within their jurisdiction.

### **Joshua Dziewa - Accomplished Wrestler**

Joshua Dziewa is currently a junior at CRS, located in PIAA District One (1).  Joshua previously attended PHS for his freshman and sophomore years, during which time he resided with his mother and father, Plaintiffs Lori and John Dziewa, in the Pennsbury School District.

Joshua has participated and excelled in the sport of wrestling from a very young age.  Recently, Joshua has competed and won several interscholastic and freestyle matches, giving him a national ranking as high as fourth in his respective weight class.  Joshua served as captain during his sophomore year, and finished the season with a record of forty-four (44) wins, and zero (0) losses.  Joshua anticipated that he would enjoy similar successes as a captain in his junior year on the PHS Wrestling

Team.

### School Transfer from PHS to CRS

Joshua's parents, Plaintiffs John and Lori Dziewa, experienced marital differences and separated in Summer 2008.  In May 2008, John Dziewa contacted a realtor regarding the purchase of a new residence, and on August 29, 2008, closed on the purchase of a new property.

Due to declining grades and class rank between Joshua's freshman and sophomore year, Plaintiffs' were concerned about Joshua's education, and attributed the downward turn in his grades to the "block scheduling" system at PHS.  Plaintiffs believed that the traditional academic schedule would be more conducive to Joshua's learning ability, and Plaintiff John Dziewa's new property is located in the CRS School District, which follows such a schedule.  As a result of this, and because Joshua expressed a desire to live with his father, Plaintiffs entered into a formal Custody And Parental Agreement dated September 2, 2008, whereby Joshua's primary residence would be with his father.

Upon arriving at CRS, Joshua wished to participate in the upcoming wrestling season.  Plaintiff John Dziewa completed a PIAA transfer waiver request form, requesting PHS consent to Joshua's immediate eligibility to wrestle at CRS.  The reason provided for the transfer on the completed the form was as follows: "Academic and building climate. Inefficiency of school district (PHS).  Position my son to succeed better academically."  While Plaintiffs informed CRS that they were separated, Plaintiff John Dziewa did not include this information on the PIAA waiver request form for privacy reasons.  Plaintiffs later learned that the waiver request form was not necessary for Joshua to be eligible for wrestling at CRS, as the PIAA By-Laws provide for the immediate eligibility of a student upon transfer due to marital separation.  See PIAA Constitution and By-Laws, Art. VI, Section 2, Paragraph B.

**PHS Challenges Transfer**

On September 12, 2008, the PHS principal returned the waiver request form, challenging Joshua's eligibility for participation in the CRS Wrestling Program. The PHS principal requested that the PIAA District Committee review the circumstances of the transfer to determine whether the transfer was in any way motivated by athletic intent or athletic recruiting. The PHS principal also checked two boxes on the waiver request form believed to apply to the present circumstances. The first box indicated that either the student or parent had a problem with a PHS coach. The second box indicated that either student or parent desires that the student participate in a more successful or higher profile program.

The PIAA District One Committee conducted a hearing on October 15, 2008 regarding the challenge, and ruled Joshua ineligible to participate in wrestling for one year from the date of his transfer. Plaintiffs then appealed the District One Committee decision to the PIAA Board of Appeal. On Friday, November 14, 2008, the PIAA Board of Appeal conducted another hearing and sustained the District One Committee decision. PIAA's Executive Director issued a letter on November 25, 2008, detailing twenty-four (24) findings of fact in support of the Board of Appeal's decision. Among the findings of fact was the board's determination that differences in explanations for the transfer provided by Joshua and Plaintiffs undermined Plaintiffs' assertion that the transfer was for academic reasons.

The wrestling season has already begun and the regular season concludes in early March. Plaintiffs allege that the adverse ruling will negatively affect Joshua's academic performance, and his ability to gain admission to a college or university. Plaintiffs now seek a preliminary injunction reversing the PIAA Board of Appeal decision.

**LEGAL STANDARD**

"[T]he grant of injunctive relief is an 'extraordinary remedy which should be granted only in limited circumstances.'" Instant Air Freight Co. v. C. F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.

1989) (citing Frank's GMC Truck Ctr, Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). Generally, in determining whether to grant a preliminary injunction or a temporary restraining order, courts in this Circuit review four factors:

> (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.

S & R Corp. v. Jiffy Lube Int'l. Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). "While the burden rests upon the moving party to make [the first] two requisite showings, the district court" should look to the factors three and four when relevant. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994). "All four factors should favor relief before an injunction will issue." S & R Corp., 968 F.2d at 374, (citing Hoxworth, 903 F.2d at 192).

In order to prove irreparable harm, the moving party "must 'demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.'" Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir.1994) (quoting Instant Air Freight Co., v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir.1989). The word "irreparable connotes ' "that which cannot be repaired, retrieved, put down again, atoned for." ' " Id. (citations omitted). In addition, the claimed injury cannot merely be possible, speculative or remote. "[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury...'" Acierno, 40 F.3d at 655 (citations omitted).

**DISCUSSION**

Courts will issue a preliminary injunction only where four factors weigh in favor of this extraordinary measure: (1) the likelihood that the applicant will prevail on the merits at the final hearing; (2) the extent to which the plaintiffs are being irreparably harmed by the conduct complained of; (3) the extent to which the defendants will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest.  However, before reaching factors three (3) and four (4), the moving party must first satisfy its burden with respect to factors one (1) and two (2).  If a plaintiff fails to satisfy this burden, this is the end of the inquiry, and a preliminary injunction will not issue.

Likelihood of Success on the Merits

In order to determine whether a preliminary injunction may issue under the present circumstances, the Court must first decide whether the moving party has fulfilled its burden of demonstrating a likelihood of success on the merits.  Here, Plaintiffs present three claims: 1) violation of the Plaintiffs' constitutional rights of privacy; 2) violation of Plaintiffs' constitutional right of equal protection of the laws; 3) arbitrary and capricious discrimination by the PIAA.  As set forth below, it is clear that Plaintiffs can only demonstrate a likelihood of success on their claim that the decision by the PIAA was arbitrary and capricious.

A.  Constitutional Rights of Privacy

It is well-established that two rights of privacy are recognized under both the United States and the Commonwealth of Pennsylvania constitutions: 1) an individual's interest in avoiding the disclosure of personal matters; and 2) independence in making certain kinds of important decisions. Whalen v. Roe, 429 U.S. 589, 599-200 (1977); Gruenke v. Seip, 225 F.3d 290, 302 (3d Cir. 2000); McCusker v. W.C.A.B., (Rushton Mining Co.), 639 A.2d 776, 778 (Pa. 1994).

In the present case, Plaintiffs assert that the PIAA violated their constitutional rights of privacy by compelling them to disclose their separation, by, in effect, punishing Joshua for their failure to disclose the separation on the waiver request form, and finally, by interfering with their decision to separate and select schools for their children.  However, none of these assertions have merit.

Constitutional protection from the disclosure of personal matters does not extend to merely any personal matter, but rather to those that "an individual deems so personal that publication adversely affects one's right to the pursuit of life, liberty, and happiness" or which impugn a person's character and subject the person to ridicule or persecution.  Fischer v. Dept. of Pub. Welfare, 543 A.2d 177, 179 (Pa. Commw. 1988).  See also Whalen, 429 U.S. 589 (disclosure of use of certain prescription medications); Gruenke, 225 F.3d at 302 (disclosure of minor's pregnancy); United States v. Westinghouse Elect. Corp., 638 F.2d 570 (3rd Cir. 1980)(disclosure of employee medical records); Stenger, 609 A.2d 796 (disclosure of identities of blood donors with AIDS); Fischer, 543 A.2d 177 (Pa. Commw. 1988)(disclosure of victim's rape).   Unquestionably, the disclosure of one's marital status is not comparable to the highly sensitive personal matters courts have found constitutionally protected.

Nor has the PIAA interfered with Plaintiffs' independence in making certain kinds of important decisions.  The PIAA is not preventing Plaintiffs from separating, or choosing a particular school for their child.  Rather, the PIAA is contesting Plaintiffs' actual motivation in transferring Joshua to CRS, and whether that motivation was athletic intent.  While the PIAA, during its investigation, asked intrusive questions, and made remarks Plaintiffs found offensive, none of these actions served to interfere with the decisions that Plaintiffs had already made, namely to separate and transfer their child to a different school.  As such, the PIAA has not engaged in any action that violated Plaintiffs' constitutional rights of privacy.

B.  Equal Protection of the Laws

Next, Plaintiffs allege that the PIAA violated their constitutional right to equal protection of the laws by treating students who transferred due to separation differently than students who transferred for other reasons.

In evaluating an equal protection claim, a court must first determine the appropriate standard to be applied, specifically strict scrutiny, intermediate scrutiny, or rational basis. Doe v. Pennsylvania Bd. of Probation and Parole, 513 F.3d 95, 107 (3rd Cir. 2007).  If the state action does not burden a fundamental right or target a suspect class, the challenged classification must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Donatelli v. Mitchell, 2 F.3d 508, 513 (3rd Cir. 1993).  If the challenged action involves a "suspect" class based upon race, alienage, or national origin, or infringes on a fundamental constitutional right, the strict scrutiny standard applies.  Id.

Here, Plaintiffs urge that this Court should apply strict scrutiny in evaluating their equal protection claim because they have alleged that their constitutional rights of privacy have been violated. Yet, Plaintiffs' analysis is incorrect.  In order to determine what level of scrutiny is required, this Court must establish whether the purported class created by the PIAA, that is, the class of students transferring schools due to separation, is a suspect class, or whether the PIAA ruling restricted Joshua's fundamental rights, therefore warranting the application of strict scrutiny.  Clearly, the classification Plaintiffs allege is not a suspect classification, which leaves the question of whether Joshua has a fundamental right to participate in sports.

Courts have consistently found that there is no constitutional right to participate in interscholastic athletic programs.  See Angstadt v. Midd-West Sch. Dist., 377 F.3d 338 (3rd Cir. 2004) ("There is no constitutionally protected right to play sports.  Thus, the fact that the requirements regulate

Megan's ability to play basketball is of no legal consequence"); Mifflin County School Dist. v. Monsell, 504 A.2d 1357 (Pa. Commw. 1986)("students do not have a property right in participating in interscholastic sports."); Dallam v. Cumberland Valley School Dist., 391 F. Supp. 358, 362 (M.D. Pa. 1975)(upholding one-year bar for transfer student because "there exists no constitutionally protected property interest in competing for a place on a high school athletic team"); Fortson v. Shaler Area School Dist., No. 92-2462 (W.D. Pa. Jan. 6, 1993)(Ziegler, J.) (applying rational basis test to PIAA's transfer rule). Consequently, the rational basis standard applies to the classification invasion that Plaintiffs allege the PIAA created.

Under a rational basis review, the alleged classification in question clearly passes muster. In Arca-Pineda v. Attorney General of U.S., 527 F.3d 101, 105-106 (3rd Cir. 2008), the United States Court of Appeal for the Third Circuit stated the following regarding the rational basis standard:

> Under this minimal standard of review, a classification is accorded a strong presumption of validity and the government has no obligation to produce evidence to sustain its rationality. Indeed, such a classification can be upheld as constitutional even when it is based on rational speculation rather than on empirical data. Once a facially legitimate reason for the classification is found, whether such a reason was articulated by [the state actor] or not, we must rule the classification constitutional. As always, when performing such review, our role is not to judge the wisdom or fairness of [the state actor's] policy choices, but rather their constitutionality.

The PIAA states that its purpose for the transfer rule is to ensure that athletics remain subservient to academics. This is a facially legitimate reason, and therefore, the alleged classification created is constitutional, rendering Plaintiffs unable to succeed on this claim.

      C.  Arbitrary and Capricious Nature of PIAA Ruling

Generally, the judicial policy with respect to high school athletic associations is one of non-interference, except where there the action complained of is fraudulent, an invasion of a property or

pecuniary right, or capricious and arbitrary discrimination. Revesz v. PIAA, 798 A.2d 830, 835-836 (Pa. Commw. 2002). To determine whether an agency action was arbitrary and capricious, federal courts examine the reasonableness of the agency's action is judged in accordance with its stated reasons. The Allegheny Defense Project, Inc. v. The United States Forest Service, 323 F.3d 215, 232 (3rd Cir. 2005) (citations omitted). The Supreme Court of Pennsylvania has recently summarized what constitutes arbitrary and capricious action in the context of reviewing an agency's decision:

> [R]egarding the "arbitrary" and "capricious" standard, our case law defines a capricious disregard of the evidence to exist "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." Furthermore, under the capricious disregard standard an agency's determination is given great deference, and relief will rarely be warranted. Under this standard, an appellate tribunal is not to substitute its judgment for that of the lower tribunal and the standard "is not to be applied in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority."

Pocono Manor Investors, LP v. Pennsylvania Gaming Control Board, 927 A.2d 209, 216 (2007) (citations and footnote omitted).

While Plaintiffs are unlikely to prevail under the federal standard, they have presented sufficient facts to prevail on their claim under state law. There are several facts which lend themselves to the determination that the PIAA decision was arbitrary, such as disregarding that Plaintiff John Dziewa's home was purchased and not rented, and the minimal amount of time in which the PIAA Board of Appeal used to review multiple, lengthy exhibits to make its ruling. Given that Plaintiffs have demonstrated a likelihood of success on their arbitrary and capricious discrimination claim, a review of the second factor in the preliminary injunction analysis is warranted.

Irreparable Harm

The second factor in the analysis is that of irreparable harm, which requires an imminent injury such that legal or equitable relief at the end of trial will not remedy the harm.  Acierno, 40 F.3d at 653.  Morever, the injury must be a presently existing threat, and not a remote or speculative possibility of future harm.  Id. at 655.

This Court, as well as all other federal courts, have previously and consistently held that ineligibility for participation in interscholastic athletic competitions alone does not constitute irreparable harm.  Further, Pennsylvania courts have made similar determinations, finding that the loss of an opportunity to play interscholastic athletics for one year does not constitute irreparable harm.  Revesz, 798 A.2d at 837.  The facts presently before this Court, while unfortunate, provide no reason to deviate from these previous determinations.

Plaintiffs strenuously argued, and presented several witnesses who testified, that if Joshua is not permitted to participate in interscholastic wrestling competitions, his opportunity to gain admission into competitive colleges and universities will be negatively affected.  Plaintiffs further asserted that Joshua will rely on the combination of athletic achievement and academics to gain admission, rather than academics alone.  Plaintiffs also argued that most financial aid is distributed on a "first come, first serve" basis, and that collegiate coaches will have determined who their recruits will be far before Joshua can begin competing again in his senior year, potentially decreasing Joshua's opportunity for a financial aid award.

While Plaintiffs present persuasive arguments, they have not fulfilled their burden of demonstrating a present threat which constitutes irreparable harm.  Plaintiffs arguments consist of threatening possibilities, which are speculative, and not the kind of harm that preliminary injunctions were fashioned to address.  Additionally, ample testimony indicated that while Joshua cannot compete,

he may attend practices and workout with the CRS team, and compete in freestyle wrestling tournaments.  Although this is not synonymous with interscholastic competition, all of these activities will allow Joshua to have some continuous, though limited, exposure.  This exposure can potentially lead to Joshua being recruited by collegiate coaches, thereby removing the present situation from the category of irreparable harm, and placing it in that of potential harm.  Despite these unfortunate circumstances, potential harm is simply  insufficient for a preliminary injunction.  Therefore, this Court will deny Plaintiffs' motion.

       An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN DZIEWA AND LORI DZIEWA,** *INDIVIDUALLY AND AS PARENTS AND NATURAL GUARDIANS OF JOSHUA DZIEWA, A MINOR*<br>**Plaintiffs,**<br><br>v.<br><br>**PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC.,**<br>**Defendant.** | **CIVIL ACTION**<br><br>**NO. 08-5792** |

### ORDER

AND NOW, this ___ of January, 2009, upon consideration of Plaintiffs' Motion for Preliminary Injunction (Doc. 2), and Defendant's Responses thereto (Docs. 8 and 12), **IT IS HEREBY ORDERED AND DECREED** that Plaintiffs' Motion is **DENIED**.

BY THE COURT

/s/ Petrese B. Tucker

_____
Hon. Petrese B. Tucker, U.S.D.J.